IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GARY A. KENNEY and )
BRENDA M. KENNEY, )
　　　　　　　　　　　　　　　　　　　　)
　　　　　Plaintiffs, )
　　　　　　　　　　　　　　　　　　　　)
　　　　　v. ) Case No. 14-2436-JAR
　　　　　　　　　　　　　　　　　　　　)
CITIMORTGAGE, INC. and )
MILLSAP & SINGER, LLC, )
　　　　　　　　　　　　　　　　　　　　)
　　　　　Defendants. )
　　　　　　　　　　　　　　　　　　　　)

## MEMORANDUM AND ORDER

Plaintiffs Gary Kenney and Brenda Kenney bring this action against Defendants seeking damages for violations of the Fair Debt Collection Practices Act ("FDCPA"), abuse of process, and trespass.[1]  This matter is before the Court on Defendant Millsap & Singer, LLC's ("Millsap") Motion to Dismiss for Failure to State a Claim under Fed. R. Civ. P. 12(b)(6) (Doc. 10).  For the reasons explained in detail below, the Court grants Defendant's motion.

## I.   Rule 12(b)(6) Standard

To survive a motion to dismiss, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[2]  Under this standard, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a

---

[1]Defendant CitiMortgage removed this case from the District Court of Leavenworth County, Kansas, Case No. 14-cv-296, with Defendant Millsap's consent. Doc. 1.

[2]*Bell Atl. Corp v. Twombly*, 550 U.S 544, 554 (2007).

reasonable likelihood of mustering factual support for these claims."[3]  "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in [his] complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim."[4]  The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.[5]  As the Supreme Court explained, "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[6]  Additionally, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[7]

In evaluating a Rule 12(b)(6) motion to dismiss, the court is limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint.[8]  But in considering the complaint in its entirety, the court also examines any documents "incorporated into the complaint by reference,"[9] and documents attached to the complaint.[10]

---

[3]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[4]*Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).

[5]*Robbins v. Oklahoma,* 519 F.3d 1242, 1247–48 (10th Cir. 2008).  "'Plausibility' in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Id.* (internal citations omitted).

[6]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557).

[7]*Id.*

[8]*Archuleta v. Wagner*, 523 F.3d 1278, 1281 (10th Cir. 2008).

[9]*Telltabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

[10]*Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172, 1189 (10th Cir. 2012) (quotation and citations omitted).

## II.     Factual Background

Drawing all reasonable inferences in favor of Plaintiffs, the following facts are taken from the Petition.

On October 5, 2007, Plaintiffs Gary and Brenda Kenney executed a Note and Mortgage in favor of Citibank, N.A. ("Citibank") for a loan in the principal amount of $75,000.00. The Mortgage in favor of Citibank (the "Citibank Mortgage") was recorded October 17, 2007, and pledged as collateral Plaintiffs' real property commonly known and numbered as 126 Ferncliff Street, Lansing, Kansas (the "Property").

On September 21, 2011, Plaintiffs executed a Note and Mortgage in favor of Citibank for a loan in the principal amount of $65,610.00. The Mortgage was recorded October 14, 2011, in the Leavenworth County Records, State of Kansas. This Mortgage also pledged the Property as collateral for the loan. On September 21, 2011, the Mortgage was assigned to Defendant CitiMortgage, Inc. ("CitiMortgage") and was recorded on April 30, 2012. On October 17, 2011, the Citibank Mortgage was subordinated to the CitiMortgage Mortgage by way of a written Subordination Agreement. As a result, the CitiMortgage Mortgage was a first lien on the Property and the Citibank Mortgage was a second lien on the Property.

Plaintiffs subsequently defaulted on their mortgage loan obligations for both the CitiMortgage Mortgage loan and the Citibank Mortgage loan. Citibank commenced foreclosure proceedings on its junior Citibank Mortgage, Case Number 12CV272, in the District Court of Leavenworth County, Kansas. In June 2012, Plaintiffs filed for Chapter 7 bankruptcy relief and on February 1, 2013, received their discharge in bankruptcy.[11]

---

[11] The Court takes judicial notice that Plaintiffs' bankruptcy schedules filed in Case No. 12-21686, reflect in the Statement of Intention section that the Property will be surrendered.

On June 10, 2013, CitiMortgage, through its counsel Millsap, filed a Motion to Intervene that contained a typographical error, citing to case number 12cv22, rather than 12CV272. The motion also referenced exhibits that were not attached to the motion. Although they were represented by counsel at the time, a copy of the Motion was sent to Plaintiffs, along with a cover letter, dated June 4, 2013. Confused by the contents of the letter, Gary Kenny called Millsap and asked to speak with Chad Doornink, the person who had signed the pleadings. Kenney indicated he was still living in the home and wanted to know the status of the foreclosure. Doornink stated that he expected a response from the court on the motion within the next seven days and that Plaintiffs could be evicted from the Property in approximately twenty-one days.

On June 14, 2013, the state court, without hearing, granted the Motion and entered an Order to Intervene. Plaintiffs contacted their counsel, and on June 17, 2013, Plaintiffs' counsel contacted Doornink, outlining the sequence of events. On June 18, 2013, Plaintiffs' counsel received two letters from Millsap that were identical to the letters sent to Plaintiffs, that requested the enclosed pleadings be filed with the court. The order was now titled Order to Intervene and for Leave to Answer out of Time, although the text of the order was unchanged. On June 19, Plaintiffs' counsel demanded the Order be withdrawn. Millsap agreed to set aside the order to intervene and the June 14 intervention order was then set aside by the state court on June 24, 2013. On August 6, 2013, Millsap withdrew its motion to intervene.

On July 12, 2013, CitiMortgage engaged Safeguard Properties to secure Plaintiffs' Property, and Safeguard entered into and secured Plaintiffs' residence without prior notification to Plaintiffs or their counsel and attempted to deny them access to the premises. On July 19,

2013, Safeguard re-entered the premises and attempted to deny Plaintiffs access.

Plaintiffs filed suit on August 11, 2013, asserting causes of action for violating the FDCPA against Millsap, and against CitiMortgage and Millsap for abuse of process and trespass.

## III.     Discussion

Defendant Millsap moves to dismiss Plaintiffs' Petition for failure to state a claim under Fed. R. Civ. P. 12(b)(6). The Court addresses each of the three counts in turn.[12]

### A.     Count 1 FDCPA

#### 1.     Statute of Limitations

Pursuant to 15 U.S.C. § 1692k(d), a claim for relief under the FDCPA must be brought "within one year from the date on which the violation occurs." Defendant maintains that Plaintiffs' FDCPA claim is barred by the one-year statute of limitations. Defendant argues that Plaintiffs cannot identify any alleged violation of the FDCPA that occurred after August 11, 2013—one year before Plaintiffs filed their Petition—and that all of the allegations of wrongdoing occurred in June of 2013.

"For statute-of-limitations purposes, discrete violations of the FDCPA should be analyzed on an individual basis."[13] "The rule should not be confused, however, with a determination that defendants' collection activities amounted to a continuing violation, which generally allows later claims to bring earlier actions within the statute of limitations."[14] Count 1

---

[12] Defendant's suggestion that the Court treat its motion as unopposed is not well taken. Plaintiffs waited thirteen days after the Court granted their motion to file their response out of time. Although the Court directed Plaintiffs to "immediately file" their response, it did not think it was necessary to impose a firm deadline to do so, as the proposed response was attached as an exhibit to Plaintiffs' Memorandum in Support of its Motion for Extension of Time to File Response. Doc. 20, Ex. A.

[13] *Solomon v. HSBC Mortg. Corp.*, 395 F. App'x 494, 497 n.3 (10th Cir. 2010) (collecting cases).

[14] *Id.* (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)).

alleges four violations of the FDCPA by Millsap: 1) the letter dated June 4, 2013 failed to contain the warning, as required by 15 U.S.C. § 1692(e)(11); 2) Millsap failed to provide a validation notice within five days to the Plaintiffs as required by 15 U.S.C. § 1692g; 3) Millsap's oral communication with Plaintiff Gary Kenney gave a false impression of the legal status of the debt, in violation of 15 U.S.C. § 1692e(2) and/or was false, deceptive, or misleading in violation of 15 U.S.C. § 1692e and e(10); and 4) Millsap communicated with Plaintiffs when it knew they were represented by counsel, in violation of 15 U.S.C. § 1692a(2).

Plaintiffs contends that "this case involves a continuous and ongoing pattern of improper conduct that intends to take advantage of the Plaintiffs in litigation over their most precious possession, their home." These "repeated and continuous violations of the FDCPA" include: mailing defective motions to intervene directly to Plaintiffs when aware that they were represented by counsel and requesting that Plaintiffs file them with the court (June 4, 2013); when, in response to these defective motions Plaintiff Gary Kenney contacted Millsap, he was given incorrect, misleading, and false information, not withstanding Plaintiff's representation by counsel (no date specified, but in response to the June 4 letter); presenting an order granting the defective motion to intervene to the state court without obtaining the approval of Plaintiffs' counsel (June 2013); when these violations were brought to Millsap's attention, it reissued the same letters with a corrected case number, but with the same date and defective motion to intervene and proposed order (June 2013); Millsap attended the Case Management Conference in the foreclosure case, indicating that it had not decided if it would continue to attempt to intervene (no date); and Millsap took action to assert CitiMortgage's claim extrajudicially by retaining Safeguard Properties to enter the Plaintiffs' residence (July 12 and 19, 2013).

Even if Plaintiffs are correct that Millsap's activities constitute an ongoing violation, they have not alleged any activities that occurred after August 11, 2013. All of the correspondence and communications with Plaintiffs occurred in June 2013. The allegations that CitiMortgage retained Safeguard to enter the premises occurred in July 2013. And, the last event by Millsap is alleged to have occurred when Millsap withdrew the Motion to Intervene in Citibank's foreclosure action on August 6, 2013, more than one year from the date of the Petition. Thus, Plaintiffs' FDCPA claim is untimely.[15]

### 2. Debt Collector/Debt Collection

Defendant argues that even assuming the statute of limitations period has not run, Millsap is not a debt collector for purposes of the FDCPA. 15 U.S.C. § 1692a(6) defines a "debt collector" as

> [A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another . . . . For the purpose of section 808(6) [15 U.S.C. § 1692f(6)], such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

Millsap contends that it is clear from the Petition that it was acting on behalf of CitiMortgage to enforce a security agreement, the CitiMortgage Mortgage. Millsap further contends that since Plaintiffs had received their discharge in bankruptcy, the only remaining remedy to CitiMortgage was to enforce its mortgage in the Property *in rem*. Thus, Millsap argues, because it was not

---

[15]Plaintiffs suggest that application of the one-year statute of limitations when a case is in litigation "would be an unwieldy requirement." Plaintiffs do not cite, nor was the Court able to find, authority that a FDCPA action should be tolled under these circumstances.

7

acting to collect a debt, the foreclosure proceedings do not fall within the terms of the FDCPA. Millsap further argues that it did not file a petition for judicial foreclosure on behalf of CitiMortgage, but merely sought leave to intervene in the pending Citibank foreclosure action, which leave was subsequently set aside by the court and withdrawn.

Courts are not unanimous in their positions on whether law firms engaged to foreclose on mortgages are outside of the definition of "debt collection" by a "debt collector" for FDCPA purposes.[16] The Tenth Circuit addressed this issue, without resolving it, in *Maynard v. Cannon*.[17] The court addressed the question of "whether a non-judicial foreclosure qualifies as debt collection activity under the FDCPA."[18] After noting that "a non-judicial foreclosure does not result in the mortgagor's obligation to *pay money*—it merely results in the sale of the property subject to a deed of trust,"—the court proceeded to examine how other jurisdictions had addressed the issue.[19] The court found that "several district courts have distinguished between judicial and non-judicial foreclosures and concluded that the FDCPA applies to the former but not the latter," typically because the latter does not result in a personal judgment against the mortgagor, and does not require the consumer to pay any money.[20] It contrasted these cases with

---

[16]*Compare Warren v. Countrywide Home Loans, Inc.*, 342 F. App'x 458, 460 (11th Cir. 2009) (holding generally, foreclosing on a security interest is not debt collection activity for purposes of § 1692e, and therefore, one who forecloses on property is not a debt collector under the FDCPA), *with Wilson v. Draper & Goldberg, L.L.C.*, 443 F.3d 373, 376–78 (4th Cir. 2006) (holding excluding all foreclosures from the definition of "debt collections" creates and "enormous" and unintended "loophole" in the FDCPA, and that attorneys hired to foreclose on residential mortgages are not by definition exempt from the FDCPA's "debt collector" provisions).

[17]401 F. App'x 389, 394–95 (10th Cir. 2010) (unpublished).

[18]*Id*. The primary distinction between "judicial" foreclosures and "non-judicial" foreclosures concerns whether the proceeding results in a deficiency judgment against the mortgagor. *Id*. at 391–92.

[19]*Id*. at 394–95.

[20]*Id*. (ollecting cases).

8

a non-foreclosure case from the Seventh Circuit that rejected a formulaic examination of the effect of the creditor's activities in determining whether "debt collection" was taking place, and instead required an examination of various factors to determine whether "the true purpose" of communications was "to collect the debt—whether through settlement or otherwise—by placing pressure on the consumer."[21] The court concluded that "the initiation of foreclosure proceedings in this case was intended to encourage Maynard to pay her debt—indeed, that is precisely what happened when the threat of foreclosure spurred settlement."[22] After framing the issue, however, the Tenth Circuit expressly declined to resolve it, noting that even if otherwise covered by the FDCPA, the creditor's communications did not violate the statute.[23]

In Kansas, foreclosure actions are judicial in nature, and the sale preserves to the creditor the right to collect any deficiency in the loan amount personally against the mortgagor.[24] Nevertheless, Millsap argues that it did not seek to collect a debt under the FDCPA. The purpose of a "debt collector" is to collect a "debt," a term also defined by the FDCPA. A "debt" is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes. . . ."[25] Here, pursuant to Plaintiffs'

---

[21] *Id.* at 395 (citing *Gburek v. Litton Loan Servicing, LP*, 614 F.3d 380 (7th Cir. 2010)).

[22] *Id.*

[23] *Id.* at 395–98; *accord Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1239 (10th Cir. 2013) (adopting *Maynard's* discussion of the issue as persuasive, but declining to decide whether a non-judicial foreclosure constitutes collection of a debt within the meaning of the FDCPA, instead analyzing whether plaintiff's claims sufficiently stated a claim that defendant violated the FDCPA).

[24] *See* K.S.A. § 60-2414.

[25] 15 U.S.C. § 1692a(5).

Chapter 7 bankruptcy discharge, they are not liable for any deficiency between the price secured at foreclosure and the amount owed on the CitiMortgage Mortgage or Citibank Mortgage.[26] Thus, Millsap argues that its actions could not have been for the collection of a debt, but rather, only for enforcement of a security interest.

The Court agrees. Because Millsap through intervention in the pending foreclosure action did not seek to collect a "debt" as defined by the FDCPA, the Court finds that its alleged conduct does not fall under the FDCPA as a matter of law.[27] Defendant's motion to dismiss Count 1 is granted.[28]

### B.     Count 2—Abuse of Process

"Abuse of process is a comparatively narrow tort that rests on use of legal process, such as a petition and summons, otherwise properly issued for "'an end other than that which it was designed to accomplish.'"[29] "The party employs the process to accomplish a purpose that could

---

[26] 11 U.S.C. § 727.

[27] *See Arruda v. Sears, Roebuck & Co.*, 310 F.3d 13, 23 (1st Cir. 2002) (stating that "[t]he FDCPA's definition of a debt is broad, but it requires at least the existence or alleged existence of an obligation to pay money" and that it would "contradict the plain language" of the statute if a discharged debt satisfied the requirements of the FDCPA); *Shaw v. Bank of Am., NA*, No. 10-cv-11021, 2015 WL 224666, at *6 (D. Mass. Jan. 15, 2015) (holding bank's foreclosure proceedings did not seek to collect a debt under the FDCPA because plaintiff had received discharge in bankruptcy); *Redjai v. Nationstar Mortg. LLC*, No. SACV 14-01626, 2014 WL 7238355, at *3 n.1 (C.D. Cal. Dec. 15, 2014) (noting that letter alone would not support FDCPA violation where letter stated that if plaintiff was in bankruptcy or had received a discharge in bankruptcy, the letter was not an attempt to collect a debt).

[28] Plaintiffs attach to their response Exhibits D and E for the proposition that there was an attempt to collect a debt. These documents, which appear to be an Annual Escrow Analysis dated December 18, 2013, requests for insurance information, and a satisfaction of mortgage dated April 2, 2014, were all issued by CitiMortgage and are not incorporated by reference, attached to the Petition, or referred to in the Petition and central to Plaintiffs' claim against Defendant Millsap, and thus the Court does not consider them in deciding the instant motion to dismiss. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[29] *Jones v. Noblit*, 260 P.3d 1249, 2011 WL 4716337, at *10 (Table) (Kan. Ct. App. Oct. 7, 2011) (quoting *Jackson & Scherer, Inc. v. Washburn*, 496 P.2d 1358, 1366 (Kan. 1972)).

not be achieved as the end result of the judicial proceeding."[30]  Under Kansas law, the elements of an action for abuse of process are 1) illegal and improper use of process; 2) an ulterior purpose in making such use; and 3) damage to the plaintiff resulting from the irregular and improper use.[31]  An action for abuse of process differs from an action for malicious prosecution of a civil suit—in abuse of process, "the gist of the tort is not commencing an action or causing process to issue without justification, but misusing or misapplying process justified in itself, for an end other than that which it was designed to accomplish."[32]  Thus, in order to show abuse of process, "[t]wo elements are necessary . . . one the existence of an ulterior purpose, and second, an act in the use of such process not proper in the regular prosecution of the proceeding."[33]  Even if a civil action is begun without probable cause, that alone does not establish a claim for abuse of process.[34]

The Kansas Court of Appeals offered a hypothetical example of what might constitute a claim for abuse of process:

> For example, if Widget Corp. of America unsuccessfully tried to merge with Widgets R Us of Boise, Idaho, to gain access to that company's formula for a new type of widget adhesive and then filed a dubious antitrust suit against Widgets R Us in an inconvenient forum as a means of bludgeoning the company into reconsidering, a claim for abuse of process might well lie.  There, the suit became a weapon to force a merger—a corporate decision wholly unconnected with the ostensible purpose of the legal action or any

---

[30]*Id.*; *see Watson v. Snodgrass*, 245 P.3d 12, 2011 WL 135035, at *3 (Table) (Kan. Ct. App. Jan. 7, 2011).

[31]*Jones*, 2011 WL 4716337 at *10 (citing *Porter v. Stormont-Vail Hosp.*, 621 P.2d 411, 416 (Kan. 1980)).

[32]*Vanover v. Cook*, 260 F.3d 1182, 1191 (10th Cir. 2001) (quoting *Ahring v. White*, 131 P.2d 699, 702 (Kan. 1942)): *see also Advantor Capital Corp. v. Yeary*, 136 F.3d 1259, 1264 (10th Cir. 1998) ("Malicious prosecution is concerned with maliciously causing process to issue, while abuse of process is concerned with the improper use of process after it has been issued." (citations and quotations omitted)).

[33]*Vanover*, 260 F.3d at 1191 (quoting *Welch v. Shepherd*, 219 P.2d 444, 447 (Kan. 1950)).

[34]*Id.*

remedy that might be obtained in that action.[35]

The facts in this case do not demonstrate that kind of ulterior purpose. In their Petition, Plaintiffs claim that the Motion to Intervene issued by Defendants was improper and served on Plaintiffs; that the service was intended to cause harassment, great inconvenience and/or great hardship to Plaintiffs; and that they suffered damages. Plaintiffs' argument that Millsap's use of process was improper focuses on the mistakes and typographical errors in the motions, contending that these errors were "reckless or willful." But as Millsap points out, Plaintiffs readily admit that CitiMortgage had a valid mortgage lien on the Property; that Citibank had initiated judicial foreclosure proceedings on the Property; and that they were in default on both mortgages. Millsap's service and filing of the motion and order for leave to intervene, albeit with typographical errors and omission of attachments, was used in conformity with the relief commonly sought in foreclosure proceedings—to enforce its mortgage in the proceedings initiated by Citibank. There are no facts alleged to support an allegation that Millsap's admittedly "sloppy" actions and pleadings were designed toward an improper end, such as a leverage for payment of the discharged obligation.[36] Indeed, once Plaintiffs' counsel contacted Millsap about the motion and order to intervene, it was set aside and withdrawn. Finally, although they generally allege that they have been damaged, Plaintiffs fail to allege how or why they were

---

[35]*Jones*, 2011 WL 4716337, at *10 (citing *Wozniak v. Pennella*, 862 A.2d 539, 548–49 (N. J. 2004) (upholding a verdict for plaintiff, a residential tenant, on an abuse of process claim where he had filed a civil action against his landlord who, in turn, brought a criminal charge of false swearing against him and then offered to make the charge "go away" if the civil action were dismissed); Restatement (Second) Torts § 682, Cmt. b (1964) ("The usual case of abuse of process is one for some form of extortion, using the process to put pressure upon the other to compel him to pay a different debt or to take some other action or refrain from it").

[36]*See Porter v. Stormont-Vail Hosp.*, 621 P.2d 411, 421–22 (Kan. 1980) (holding that a claim for abuse of process would not lie based on postjudgment collection procedures that plaintiff contended were harassing and abusive but which conformed to the statutory procedures).

damaged by Millsap's attempt to intervene on behalf of CitiMortgage. Defendant's motion to dismiss Count 2 is granted.

### C. Count 3—Trespass

Although trespass has historical roots in the criminal law, it is also recognized as a tort, compensable in damages; generally, every entry upon the land of another, except by consent, is a trespass, except upon consent of the possessor of the land.[37] Count 3 alleges that "Defendants intentionally intruded upon the Property," and that "Plaintiffs suffered damages." As Millsap points out in support of dismissal of Count 3, Plaintiffs fail to allege any trespass on the part of Millsap. Instead, they specifically assert that it was Safeguard Properties that trespassed on the Property and that Safeguard was hired by CitiMortgage. Plaintiffs did not allege that Millsap was involved in retaining Safeguard or otherwise involved in the alleged trespass on the Property. Plaintiffs' assertion in their response that additional discovery is needed to determine whether Millsap was involved in the alleged trespass does not cure their failure to state a plausible claim against Millsap, and the motion to dismiss Count 3 is granted.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Millsap & Singer, LLC's Motion to Dismiss (Doc. 10) is GRANTED.

**IT IS SO ORDERED.**

Dated: April 28, 2015

                                              S/ Julie A. Robinson
                                              JULIE A. ROBINSON
                                              UNITED STATES DISTRICT JUDGE

---

[37]*Belluomo v. KAKE TV & Radio, Inc.*, 596 P.2d 832, 840 (Kan. Ct. App. 1979) (citations omitted).